UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

EUGENE D.,

             Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

             Defendant.

Case No. 2:18-CV-00853-TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of Defendant's denial of his application for disability insurance benefits and supplemental security income. The parties have consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c); Federal Rule of Civil Procedure 73; Local Rule MJR 13. As discussed below, the undersigned agrees that the ALJ erred and the ALJ's decision is: (1) reversed and remanded for further administrative proceedings as to the period from April 7, 2014 to present, and (2) reversed and remanded for an award of benefits because plaintiff meets the criteria for disability as to the period between December 8, 2010 and April 6, 2014.

I.     ISSUES FOR REVEW

1. Did the ALJ err in evaluating Plaintiff's subjective allegations?
2. Did the ALJ err in evaluating the opinion evidence?
3. Did the ALJ err in assessing Plaintiff's residual functional capacity ("RFC")?

## II. FACTUAL AND PROCEDURAL HISTORY

This case has a lengthy procedural history. On June 21, 2011, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging a disability onset date of December 8, 2010. AR 13, 164-70, 171-77, 854. Plaintiff's applications were denied upon initial administrative review and on reconsideration. AR 13, 110-17, 121-25, 126-33, 854. A hearing was held before Administrative Law Judge ("ALJ") David Johnson on November 20, 2012. AR 31-67, 1043-79. In a decision dated January 18, 2013, the ALJ determined Plaintiff to be not disabled. AR 10-26, 926-42. The Social Security Appeals Council denied Plaintiff's request for review on July 23, 2014. AR 1-7, 947-53.[1]

On September 30, 2014, Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's final decision. AR 955, 966. On September 2, 2015, this Court issued an order reversing the Commissioner's decision to deny benefits and remanding the case for further administrative proceedings. AR 954-68. On December 14, 2015, the Appeals Council issued an order vacating the ALJ's decision of January 18, 2013 and remanding the case for further proceedings consistent with the Court's order. AR 969-73.

On July 21, 2016 ALJ Glenn G. Meyers held a new hearing. AR 876-925. In a decision dated June 22, 2017, ALJ Meyers issued a revised decision again finding that Plaintiff was not disabled. AR 851-66. On July 26, 2017, Plaintiff filed exceptions to the hearing decision with the Appeals Council. AR 836-38, 849. On October 20, 2017, Plaintiff's representative filed

---

[1] On September 26, 2014, Plaintiff filed new applications for disability insurance benefits and supplemental security income. AR 1042. Plaintiff's applications were denied initially and upon reconsideration. AR 1098-1104, 1105-12, 1114-19, 1120-25. Plaintiff filed a request for a hearing by an ALJ on May 28, 2015. AR 1126-27. On January 21, 2016, ALJ Meyers dismissed Plaintiff's request for a hearing, finding that Plaintiff's 2014 applications were duplicative following this Court's decision to reverse and remand the case for additional proceedings. AR 1042. ALJ Meyers ordered the claim files to be consolidated, and a new decision issued on the consolidated claims. *Id.*

additional, more detailed exceptions with the Appeals Council. AR 835, 844-48. On April 13, 2018, the Appeals Council declined to assume jurisdiction over Plaintiff's claim. AR 829-34. As such, the ALJ's decision of June 22, 2017 is the final decision of the Commissioner subject to judicial review. Plaintiff appealed to this Court and seeks a finding that Plaintiff was disabled beginning on his alleged onset date and asks the Court to remand this case for an award of benefits. Dkt. 13, pp. 18-19.

### III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court is required to weigh both the evidence that supports, and evidence that does not support, the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

### IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ assesses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a

significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(e), 416.920(e).

### A. Whether the ALJ properly evaluated Plaintiff's subjective allegations

Plaintiff argues the ALJ did not properly evaluate his subjective allegations. Dkt. 13, pp. 12-15. In weighing a Plaintiff's testimony, an ALJ must use a two-step process. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id.*

#### 1. Whether the ALJ properly evaluated Plaintiff's post-surgical limitations

Plaintiff alleges that the ALJ erred by citing Plaintiff's improvement following heart surgery in February 2014 as a reason to reject Plaintiff's testimony concerning his limitations. Dkt. 13, p. 12, Dkt. 15, p. 5. The Court finds that the ALJ did not err with respect to this part of the decision.

Impairments that can be effectively controlled by medication or treatment are not considered disabling for purposes of social security benefits. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's analysis is consistent with Plaintiff's own statements. During the initial hearing, Plaintiff testified that lifting even 5 pounds would place stress on his heart and cause him chest pain. AR 46-47. During the second ALJ hearing, held on July 21, 2016, Plaintiff said that he was not sure what his lifting restrictions were after his surgery, but indicated that he could

lift up to 10 pounds. AR 917, 919. Plaintiff also stated that his surgery helped "quite a bit" with his shortness of breath. AR 919. The ALJ also cited evidence that following his surgery, Plaintiff's cardiac symptoms, including his shortness of breath and exertional limitations, improved significantly. AR 860-61.

Plaintiff also argues that the ALJ erred in finding that Plaintiff was able to exercise by walking, since this activity was consistent with a post-surgical recommendation from his physician. Dkt. 13, pp. 12-13. In June 2014, several months after Plaintiff's surgery, Plaintiff's physician prescribed moderate walking three times a week for 30 minutes, as tolerated. AR 1514. The ability to perform even this level of activity represented a significant improvement from Plaintiff's initial hearing testimony, when he stated that he could not climb a flight of stairs without stopping to rest or walk approximately 15 to 20 feet before experiencing shortness of breath. AR 43. Yet the ALJ's findings concerning Plaintiff's exertional capacity were not restricted to Plaintiff's post-surgical limitations as assessed by his physician. The ALJ also cited treatment records that were independent of the assessments made by his post-surgical physician's recommendation – records from 2014 through 2016, showing a significant improvement in Plaintiff's ability to walk longer distances and climb stairs. AR 860-61.

### 2. Whether the ALJ properly evaluated the treatment record

Plaintiff next argues that the ALJ erred in evaluating Plaintiff's allegations concerning dizziness when he failed to discuss a treatment note from November 2013 in which Plaintiff stated that he had increasing shortness of breath on exertion over the previous 6 months to 1 year. Dkt. 13, p. 13, AR 1830. The Court finds that the ALJ did not err with respect to this part of the decision.

It is unnecessary for the ALJ to "discuss *all* evidence presented". *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in

original). However, an ALJ "may not reject 'significant probative evidence' without explanation*.*" *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (quoting *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))).

In evaluating Plaintiff's allegations concerning dizziness, the ALJ found that the evidence reflected minimal complaints of dizziness or fainting. AR 861. The ALJ did not specifically mention the treatment note from November 2013 but did note that Plaintiff reported a fainting episode in July 2013. AR 861. The ALJ then discussed the medical record between 2014 and 2016, which indicated that Plaintiff's dizziness and fainting symptoms gradually improved and eventually resolved. AR 861. An isolated treatment note from November 2013 does not constitute significant probative evidence and does not contradict the ALJ's overall conclusion that Plaintiff's dizziness gradually improved and eventually resolved.

Plaintiff further argues that the ALJ erred by not considering a treatment note from August 2014 in which Plaintiff's physician noted that Plaintiff was having exertional symptomatic premature ventricular contractions ("PVC") following his February 2014 heart surgery. Dkt. 13, p. 13; AR 1922. Plaintiff also argues that the ALJ erred by not mentioning a January 2015 note in which Plaintiff indicated that he was still having shortness of breath when walking up hills. Dkt. 13, p. 13; AR 1622.

First, these isolated treatment notes do not disturb the ALJ's finding that Plaintiff's cardiac symptoms improved significantly following surgery. Second, these treatment notes, had they been discussed by the ALJ, would not necessarily be inconsistent with his findings. The August 2014 treatment note indicated that Plaintiff was having exertional PVC contractions, but also indicated that Plaintiff's cardiac symptoms were "much improved" following surgery. AR

1922. The treatment note from January 2015 indicates that Plaintiff was still having shortness of breath when walking up hills, but also indicated that Plaintiff could walk a significant flat distance without difficulty and wanted to start running. AR 1622.

### 3. Whether the ALJ properly evaluated Plaintiff's fatigue

Plaintiff argues that the ALJ erred in evaluating his allegations concerning fatigue stemming from his sleep apnea. Dkt. 13, p. 13. Plaintiff asserts that the ALJ erred in finding that Plaintiff was not using his continuous positive airway pressure ("CPAP") machine consistently without considering that Plaintiff was living out of his car during part of the period at issue and did not have access to an electrical outlet. Dkt. 13, p. 13. The Court finds that this part of the ALJ's decision was error.

Social Security Ruling ("SSR") 16-3p provides that if an individual fails to follow prescribed treatment that might improve symptoms, an ALJ may find that the alleged intensity of an individual's symptoms is inconsistent with the record. However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *See also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[A]n unexplained, or inadequately explained, failure to . . . follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.").

During the initial hearing in November 2012, Plaintiff testified that he had been living out of his car since the beginning of 2012. AR 45. Plaintiff stated that he would stay with friends for as long as possible but could only stay with each friend for between two weeks and a month. *Id.* Plaintiff testified that he was unable to use his CPAP machine inside his vehicle because he did not have the correct adapter but was able to use the CPAP machine when he was staying at a friend's house. AR 53. In January 2014, Plaintiff stated that he was using his CPAP machine

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 7

every night he was able to stay somewhere with an electrical outlet. AR 1390. Plaintiff secured new housing in May 2014. AR 883, 1511-12. Plaintiff testified that he would be unable to perform even sedentary work because he would fall asleep due to fatigue, even if he was using his CPAP machine. AR 920.

In evaluating Plaintiff's allegations concerning his sleep apnea and fatigue, the ALJ found that Plaintiff:

> said that he feels fatigued from his sleep apnea but the evidence reflects that the claimant has not used his CPAP consistently and when he does his energy level improves. For instance, in April 2014, the claimant stated he had not been using his CPAP much. Readings for the month indicated that he had only 23% usage of his CPAP machine. In April 2015, he reported that his energy had been better with his CPAP machine. Then in January 2016, he reported getting great sleep. If the claimant was getting "great sleep", then he would not likely be fatigued during the day.

AR 861 (citations omitted).

Plaintiff testified that he did not have a permanent residence between early 2012 and May 2014. However, the record is unclear concerning how often Plaintiff had access to an electrical outlet for his CPAP machine. As such, the ALJ erred in not considering Plaintiff's housing situation when evaluating his inconsistent use of his CPAP machine.

Plaintiff contends that the ALJ engaged in speculation by concluding that Plaintiff's January 2016 statement that he was getting "great sleep" after getting a new mask for his CPAP machine was evidence that he would not likely be fatigued during the day. Dkt. 13, p. 13; AR 861. An ALJ is entitled to draw inferences logically flowing from the evidence. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir.1982). However, even if the ALJ could infer that Plaintiff's January 2016 statement was proof of reduced fatigue, such a conclusion would not address the impact of Plaintiff's fatigue symptoms prior to that date, particularly those from

before May 2014, when Plaintiff did not have permanent housing or regular access to an electrical outlet for his CPAP machine.

### 4. Whether the ALJ properly evaluated Plaintiff's mental health allegations

Plaintiff challenges the ALJ's evaluation of Plaintiff's mental health impairments. Dkt. 13, pp. 13-14. Plaintiff alleges that the ALJ erred by finding that "[a]fter some brief mental health counseling, [Plaintiff's] only mental health treatment consisted of prescription medication citalopram by his primary care provider." *Id.*; AR 861, 1642. Plaintiff alleges that this does not constitute a clear and convincing reason for rejecting Plaintiff's allegations, "especially in light of the ALJ's failure" to discuss clinical findings in Plaintiff's mental health treatment records. Dkt. 13, p. 13. Plaintiff cites mental health treatment records from July 2012 to February 2014 which he argues are consistent with Plaintiff's allegations and inconsistent with the ALJ's RFC finding that Plaintiff could perform simple, routine work. Dkt. 13, pp. 9-11.

In assessing Plaintiff's mental health allegations, the ALJ found that Plaintiff's mood symptoms occurred primarily in the context of situational stressors. AR 861. The Court finds that the ALJ erred with respect to this part of the decision.

In January 2013, during the period cited by Plaintiff, he underwent a psychiatric evaluation with Airnee Wagonblast, A.R.N.P. AR 825-28. During that evaluation, Plaintiff acknowledged "significant psychosocial stressors" that were having an impact on his mood, including housing, financial, employment, relationship, and legal difficulties. AR 825.

A finding that a claimant's mental health symptoms were caused by situational stressors can serve as a clear and convincing reason for rejecting Plaintiff's allegations. *See Chesler v. Colvin*, 649 F. App'x. 631, 632 (9th Cir. 2016) (symptom testimony properly rejected in part because "the record support[ed] the ALJ's conclusion that [plaintiff's] mental health symptoms were situational"). Here, Plaintiff's mental health symptoms were not caused by situational

stressors; he had the underlying severe impairment of depression. Further, the situational stressors exacerbating his condition were not events of brief duration, but ongoing difficulties that worsened his mental health symptoms during a significant part of the period at issue.

### B. Whether the ALJ properly evaluated the medical opinion evidence

In assessing an acceptable medical source, an ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

    1. <u>Dr. Cheng, Dr. Khan, Dr. Thronson, Dr. Ho, Dr. Zha, Dr. Koukol</u>

Plaintiff maintains that the ALJ failed to properly assess a May 2011 opinion from Dr. Andrew Cheng. Dkt. 13, pp. 3-4. Plaintiff further contends that the ALJ erred in assigning "little weight" to the opinions of Dr. Khan, Dr. Thronson, Dr. Ho, Dr. Zha, and Dr. Koukol. Dkt. 13, pp. 4-6.

Here, even though the ALJ found that Plaintiff has the severe impairment of cervical degenerative disc disease, Plaintiff's lifting and carrying limitations stem primarily from his cardiac condition. During the initial hearing, Plaintiff testified that lifting even 5 pounds would

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 10

place stress on his heart and cause him chest pain. AR 46-47. Plaintiff testified that he was unable to lift even half a gallon of milk without having chest pain. AR 46-48.

Plaintiff argues that the ALJ erred in citing the improvement in Plaintiff's shortness of breath and fatigue symptoms as evidence to reject Dr. Cheng's opinion and finding that he would have less fatigue in a work setting and a greater ability to lift and carry objects. Dkt. 13, p. 4; AR 862. Plaintiff reasons that even if his condition did improve, the ALJ has not cited evidence that shows he improved enough to lift and carry more than 10 pounds occasionally, which would be required by the light RFC assessed by the ALJ. *Id.* Plaintiff further argues that even if Plaintiff's condition did improve after surgery, this would not justify the ALJ's rejection of opinion evidence rendered prior to Plaintiff's cardiac operation. *Id.* at 5.

The ALJ's general finding that Plaintiff's cardiac impairment improved with medication, and saw significant improvement after surgery, is supported by substantial evidence. *See supra* Section A. However, the ALJ has not cited any medical opinion evidence indicating that Plaintiff's condition improved enough for Plaintiff to perform the lifting and carrying necessary for light work, either before or after his February 2014 surgery.

The only physician who assessed Plaintiff as being able to perform work at the light exertional level was state agency consultant Charles Wolfe, MD in September 2011. AR 93-94, 105-06. The ALJ did not discuss or assign weight to Dr. Wolfe's opinion. None of the medical opinions rendered prior to Plaintiff's surgery assessed him as being able to perform the lifting and carrying necessary for light work. All the physicians who assessed him prior to his surgery opined that he would be unable to perform the lifting and carrying necessary to perform sedentary work.

The only medical opinions from after Plaintiff's cardiac surgery, those rendered by Dr. Zha and Dr. Koukol, indicate that he could lift and carry 10 pounds frequently and 10 pounds occasionally, consistent with sedentary work. AR 1015-16, 1033-34, 1427-29, 1716-1718, 1719-1721. The ALJ has assigned both opinions "little weight" and has not cited any opinion evidence assessing Plaintiff's precise post-surgical functional limitations.

The ALJ assigned "little weight" to all the medical opinion evidence concerning Plaintiff's physical limitations and has not provided any basis for the Court to assess what Plaintiff's precise functional capacity was before and after his surgery. AR 861-62. As such, the ALJ's finding that Plaintiff could perform light work before his February 2014 surgery is not supported by substantial evidence. The ALJ has also not cited any opinion evidence prior to Plaintiff's surgery assessing Plaintiff as being able to perform the lifting and carrying necessary for sedentary work.

As discussed above, the ALJ's findings concerning mental health symptoms are not supported by substantial evidence and the ALJ has not provided a valid reason for discounting Plaintiff's fatigue symptoms prior to 2016. *See supra* Sections A.3 and A.4.

As such, the ALJ's RFC is not supported by substantial evidence; the Court therefore cannot evaluate any assessment of Plaintiff's residual functional capacity before his February 2014 cardiac operation. Because of this, the Commissioner has not met the burden of establishing there are a significant number of jobs Plaintiff could perform at step five of the sequential evaluation. *Hill v. Astrue, 698 F.3d 1153, 1161* (9th Cir. 2012) (At step five, it is the ALJ's burden to show the claimant can perform jobs that exist "in significant numbers in the national economy."); *see also* 20 C.F.R. § 404.1520(e), § 416.920(e).

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 12

Following Plaintiff's surgery, he first began to exhibit symptom improvement at a follow up appointment on April 7, 2014. AR 1282. Accordingly, remand for an award of benefits is the appropriate remedy, as to the period before Plaintiff's improvement with cardiac surgery, from December 8, 2010 to April 6, 2014.

While the RFC assessed by the ALJ is not supported by substantial evidence, the ALJ's broader conclusion that Plaintiff's condition improved significantly after surgery does find support in the record. As such, it is possible that Plaintiff could have performed a range of sedentary work following his post-surgical improvement, consistent with the opinions of Dr. Zha and Dr. Koukol, and Plaintiff may have been able to perform several of the sedentary jobs cited by the ALJ at step five. Accordingly, remand for further proceedings is appropriate as to the period from April 7, 2014.

2. Dr. Andersen

Plaintiff maintains that the ALJ erred in evaluating the opinion of examining psychiatrist Dr. Andersen. Dkt. 13, pp. 7-9. Dr. Andersen examined Plaintiff in April 2015. AR 1635-43. Dr. Andersen's evaluation consisted of a clinical interview and a mental status examination. AR 1643. The ALJ assigned "little weight" to Dr. Anderson's opinion, reasoning that her opinion:

> is not consistent with the claimant's mental health treatment that has been largely related to situational stressors. Second, I note that the claimant was not forthcoming with Dr. Anderson as he was somewhat vague and guarded in his responses. The claimant was also not forthcoming about his alcohol use as he said he had no alcohol since 2013 but in June 2015 the claimant noted alcohol use at least 10 days within a 90 day period. Thus, Dr. Andersen's opinion was not based upon a full and complete picture of the claimant's mental health. Third, her opinion is not consistent with her examination findings that showed the claimant's fund of knowledge was good, he could repeat four digits forward and five digits backward, and remembered two of three objects at four to five minutes. Fourth, the claimant's ability to play guitar professionally reflects an ability to pay attention to detail and focus on tasks, completing them in a timely manner. The claimant also kept his place clean to pass a housing inspection, without help from others. Lastly, the claimant stated that his depression symptoms had persisted

    since childhood and as indicated above the claimant was able to work at levels of substantial gainful activity.

AR 863-64 (citations omitted).

  The ALJ has provided specific, legitimate reasons for assigning little weight to Dr. Andersen's opinion. For the reasons discussed above, the ALJ properly did not properly discount Plaintiff's allegations concerning his mental health. *See supra* Section A.4.

  However, the ALJ's reference to Plaintiff's inaccurate statements regarding his substance use constitutes a specific, legitimate reason for discounting Dr. Andersen's opinion. *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (An ALJ may discount a physician's opinion when that opinion is partly based on inaccurate medical information provided by the claimant). Plaintiff's substance use is relevant to Dr. Andersen's assessment of Plaintiff's mental limitations. During his interview with Dr. Andersen, Plaintiff stated that he had last used alcohol in 2013. AR 1640. Plaintiff stated he had used methamphetamine "briefly" and last used the drug in 2012. *Id.* Despite Plaintiff's statements, Dr. Andersen stated that she was "not entirely certain" about the status of Plaintiff's substance abuse issues. AR 1643. Dr. Andersen said that Plaintiff's responses were vague and guarded in his responses and noted that she had the impression that Plaintiff was "considering his responses fairly carefully and choosing his words fairly carefully." AR 1636.

  In June 2015, Plaintiff stated that he had most recently used methamphetamine and alcohol in June 2015 and had used both substances for 10 of the previous 90 days. AR 2116-17. Plaintiff stated that during the previous 2 to 12 months he had used alcohol where it made the situation unsafe or dangerous. AR 2117. Plaintiff stated that during that prior to June 2014, he had continued to use alcohol despite recognition that it interfered with his responsibilities and caused legal problems. *Id.* The ALJ did not err in citing Plaintiff's inaccurate statements to Dr. Andersen as a reason for discounting her opinion.

Plaintiff also challenges the other reasons the ALJ cited for discounting Dr. Andersen's opinion. Dkt. 13, pp. 8-9. The Court need not assess whether these reasons were proper, as the ALJ has provided a specific, legitimate reasons for discounting Dr. Andersen's opinion, so any error would be harmless. *See Presley-Carrillo v. Berryhill*, 692 Fed. Appx. 941, 944-45 (9th Cir. 2017) (citing *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (although an ALJ erred on one reason he gave to discount a medical opinion, "this error was harmless because the ALJ gave a reason supported by the record" to discount the opinion).

### C. Whether the ALJ properly assessed the RFC

Plaintiff maintains that the ALJ erred in finding that there were a significant number of jobs he could perform at step five of the sequential evaluation. Dkt. 13, pp. 15-18. For the reasons discussed above, the ALJ erred in assessing Plaintiff's RFC. *See supra* Section B.1.

### D. Whether this case should be remanded for an award of benefits

Plaintiff argues that the ALJ erred and that this case should be remanded for an award of benefits. Dkt. 13, p. 19. "The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668.

The Ninth Circuit has developed a three-step analysis for determining when to remand for a direct award of benefits. Such remand is generally proper only where

> "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;

and (3) if the improperly discredited evidence were credited as true, the ALJ
would be required to find the claimant disabled on remand."

*Trevizo*, 871 F.3d at 682-83 (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

The Ninth Circuit emphasized in *Leon v. Berryhill* that even when each element is satisfied, the district court still has discretion to remand for further proceedings or for award of benefits. 80 F.3d 1041, 1045 (9th Cir. 2017).

The residual functional capacity assessed by the ALJ is not supported by substantial evidence. The ALJ erred in assessing the opinion evidence related to Plaintiff's physical limitations, as well as Plaintiff's testimony related to his fatigue and his mental impairments. The Commissioner has not met the burden of establishing there were a significant number of jobs Plaintiff could perform at step five of the sequential evaluation. Crediting Plaintiff's testimony concerning his fatigue as true, Plaintiff was unable to perform even sedentary work during much of the period at issue, even when using his CPAP machine. The record has been fully developed, and further administrative proceedings would serve no useful purpose in clarifying Plaintiff's functional capacity between December 8, 2010 and April 6, 2014. Accordingly, remand for an award of benefits is appropriate as to this period.

The Court also considered the length of time Plaintiff has been waiting for a final disposition. *See Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Plaintiff filed his applications for disability insurance benefits and supplemental security income in June 2011 and has been waiting more than 8 years for a final decision. AR 13, 164-70, 171-77, 854.

There remains, however, a degree of uncertainty concerning whether Plaintiff could have performed sedentary work at some point in time *after* his cardiac operation. On remand, the ALJ is directed to re-evaluate the medical evidence and if necessary take new evidence concerning the period from April 7, 2014 onward, and assess whether Plaintiff's condition improved enough

for him to perform sedentary jobs at step five. If the ALJ's re-evaluation results in a revised RFC, the ALJ should, with the assistance of a vocational expert, ascertain whether there would be a significant number of jobs Plaintiff could perform from April 7, 2014 onward -- consistent with elements of any revised RFC.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ erred in finding Plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings as to the period from April 7, 2014 to present. Defendants decision is REVERSED and REMANDED for an award of benefits as to the period between December 8, 2010 and April 6, 2014.

Dated this 4th day of September, 2019.

Theresa L. Fricke
United States Magistrate Judge